UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
DR. LAVAL S. WILSON,                          :
                      Plaintiff,              :
                               :          **MEMORANDUM DECISION**
v.                                            :
                               :          14 CV 5467 (VB)
POUGHKEEPSIE CITY SCHOOL DISTRICT,            :
                    Defendant.              :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Dr. Laval S. Wilson brings this action pursuant to 42 U.S.C. § 1983 against

defendant Poughkeepsie City School District (the "District"). Plaintiff alleges defendant violated

his First Amendment rights, and also asserts a state law breach of contract claim.

      This case was originally filed in Supreme Court, Dutchess County, and removed to this

Court on July 21, 2014. Defendant moved to dismiss, and plaintiff filed the first amended

complaint ("FAC") with leave of court on October 30, 2014. Now pending is defendant's

motion to dismiss the FAC pursuant to Rule 12(b)(6). (Doc. #18).

      For the reasons set forth below, defendant's motion is GRANTED.

      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

      For purposes of deciding the pending motion, the Court accepts as true all well-pleaded

allegations in the FAC and draws all reasonable inferences in favor of plaintiff.

      From approximately April 2006 until June 30, 2013, plaintiff was employed as the

District's Superintendent.

In late 2010, plaintiff alleges Raymond Duncan, a Poughkeepsie Board of Education member, allowed his son Jeffrey "unauthorized access" to the District's property for "a non-sanctioned track event."  (FAC ¶¶ 14, 15).

On December 2, 2010, plaintiff wrote a letter to Duncan, complaining that Jeffrey had entered "two local Dutchess County Invitational Races" and attempted to run "in a Section I Championship Cross Country Race," even though the District did not have a cross-country team or coach.  (Bartley Decl. Ex. 4 at 2; Pl. Decl. Ex. K at 2).  He also chided Duncan for asking the District's Athletic Director to provide Jeffrey with a track uniform, and then allowing Jeffrey to wear that uniform during the races.  He noted the District had been censured for Jeffrey's "improper involve[ment] in races."  (Bartley Decl. Ex. 4 at 3; Pl. Decl. Ex. K at 3).

Plaintiff wrote:  "The fact that you supported this misrepresentation is a major concern to me, as Superintendent.  You and your son put the school district in a vulnerable position of being sanctioned by the Executive Director of Section I."  (Bartley Decl. Ex. 4 at 4; Plaintiff Decl. Ex. K at 4).  Plaintiff concluded: "I am requesting that you contact my secretary, Mrs. Mary Ann Day, to set up a meeting with me in my office, to review . . . the protocols I expect of you as a Board Member in interacting with members of my staff."  (Bartley Decl. Ex. 4 at 5; Plaintiff Decl. Ex. K at 5).  He signed the letter "Laval S. Wilson, Ph.D., Superintendent."  (Id.).  Plaintiff copied the letter to all members of the Board of Education and various employees of the school district.

Plaintiff alleges his "comments to the Defendant's board were made [as] a private citizen" and "were not made in the official scope of his employment duties."  (FAC ¶¶ 16, 17).

Plaintiff also alleges he voiced concern with respect to a different issue—the District's policies with respect to performance reviews for teachers and principals.  According to the FAC,

plaintiff "disagreed with the Defendant's counsel over the applicability and implementation of annual professional performance reviews . . . required by 3012-c of the Education Law of the State of New York[.]" (See FAC ¶¶ 19, 20).

Following the 2011-2012 school year, plaintiff received a negative performance evaluation and a letter of discipline from the District.  Plaintiff alleges he received the negative evaluation and letter of discipline in retaliation for his comments about the misuse of the District's property and the applicability of the Education Law Section 3012-c.

## DISCUSSION

I.      Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."  Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). A district court may also consider a document that is not incorporated by reference when the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

II.   First Amendment Claim

To state a First Amendment retaliation claim as a public employee, plaintiff must plausibly allege (i) his speech was constitutionally protected; (ii) he suffered an adverse employment action; and (iii) the protected speech caused the subsequent adverse employment action. Hoyt v. Andreucci, 433 F.3d 320, 327 (2d Cir. 2006); see also Winters v. Meyer, 442 F. Supp. 2d 82, 86-87 (S.D.N.Y. 2006).

Whether a public employee's speech is constitutionally protected depends on "whether the employee spoke as a citizen on a matter of public concern." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). This analysis requires two distinct inquiries: (i) whether the employee spoke "as a citizen" rather than as an employee and (ii) "whether the subject of the employee's speech was a matter of public concern." Jackler v. Byrne, 658 F.3d 225, 235 (2d Cir. 2011). "If the employee did not speak as a citizen, the speech is not protected by the First Amendment" even if the subject of the employee's speech was a matter of public concern. Id. at 237.

To satisfactorily allege he spoke as a private citizen, plaintiff's complaint must include factual allegations that his statements were not made pursuant to his official duties. See Garcetti v. Ceballos, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their

4

official duties, the employees are not speaking as citizens for First Amendment purposes.").
"Restricting speech that owes its existence to a public employee's professional responsibilities
does not infringe any liberties the employee might have enjoyed as a private citizen." Id. at
421-22.

"The inquiry into whether a public employee is speaking pursuant to [his] official duties
is not susceptible to a brightline rule." Ross v. Breslin, 693 F.3d 300, 306 (2d Cir. 2012).
Rather, courts must consider the relationship between the nature of the plaintiff's job
responsibilities and the nature of the speech. Id. "[U]nder the First Amendment, speech can be
'pursuant to' a public employee's official job duties even though it is not required by, or
included in, the employee's job description." Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d
Cir. 2010). Moreover, speech is "pursuant to" official duties when it is "part-and-parcel of [the
employee's] concerns about his ability to properly execute his duties." Id.

At the motion to dismiss stage, courts employ an "objective inquiry" to determine
"whether a public employee spoke 'pursuant to' his or her official duties." Weintraub v. Bd. of
Educ., 593 F.3d at 202. The Court must make "an objective, practical and common sense
appraisal of a public employee's official duties," and need "not rely[] solely on the factual or
conclusory allegations contained in [plaintiff's complaint]" to determine the scope of his official
duties. Adams v. New York State Educ. Dep't, 752 F. Supp. 2d 420, 428 (S.D.N.Y. 2010).

Plaintiff alleges he spoke as a private citizen about two subjects: (i) the misuse of the
District's resources and (ii) the applicability and implementation of Section 3012-c of the
Education Law. The Court will analyze each instance of allegedly private speech in turn.

5

A.    Misuse of the District's Resources

First, plaintiff argues he spoke as a private citizen when he criticized Duncan for helping Jeffrey obtain unauthorized access to the District's resources for a non-sanctioned track event. The Court disagrees.

Plaintiff alleges his "comments to the Defendant's board were made [as] a private citizen" and "were not made in the official scope of his employment duties." (FAC ¶¶ 16, 17). This allegation is a legal conclusion, and therefore must be disregarded. See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal brackets and quotation marks omitted)).

To the contrary, the facts set forth by plaintiff compel the conclusion that plaintiff was speaking pursuant to his official duties as Superintendent.

First, plaintiff's speech was part-and-parcel of his concerns about his ability to properly execute his duties. Plaintiff's December 10, 2010, letter[1] to Duncan states: "The fact that you supported this misrepresentation is a major concern to me, as Superintendent. You and your son put the school district in a vulnerable position of being sanctioned by the Executive Director of Section I." (Bartley Decl. Ex. 4 at 4; Pl. Decl. Ex. K at 4). Plaintiff's reference to his job title

---

[1]    This court can consider the December 2, 2010, letter when deciding the pending motion to dismiss because plaintiff relied heavily upon its terms and effect in drafting the complaint, see DiFolco v. MSNBC Cable L.L.C., 622 F.3d at 111, and it is clear that no dispute exists regarding the authenticity, accuracy, or relevance of the document, see Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006). Plaintiff's allegations rely heavily on his "comments" and "criticism[s]" to the District's Board of Education, some of which are expressed in the December 2, 2010, letter to Duncan. (See FAC ¶¶ 14-16, 18, 34). Both plaintiff and defendant submitted a copy of the December 2, 2010, letter to the Court, and therefore it is clear there is no dispute about the authenticity, accuracy, or relevance of the letter.

and his complaint that Duncan put the District in a vulnerable position demonstrate plaintiff felt his speech was "necessary for the orderly performance of [his] duties." Taylor v. N.Y.C. Dep't of Educ., 2012 WL 3890599, at *6 (S.D.N.Y. Sept. 6, 2012). "It is immaterial whether [plaintiff] experienced some personal gratification from writing the [letter]; his First Amendment rights do not depend on his job satisfaction." Garcetti v. Ceballos, 547 U.S. at 421.

Second, plaintiff's speech was undertaken in the course of performing his job. The December 2, 2010, letter was printed on the District's letterhead, and concluded by requesting that Duncan set up a meeting in plaintiff's office to discuss his expectations of how Board Members should interact with his staff. Plaintiff signed the letter using his official title. Invoking his authority as Superintendent to reprimand a Board Member for inappropriate interaction with plaintiff's staff is clearly an activity plaintiff undertook in the course of performing his job. And "activities undertaken in the course of performing one's job are activities pursuant to official duties." Weintraub v. Bd. of Educ., 593 F.3d at 202 (internal alterations omitted).

Finally, plaintiff sent copies of the letter to the President and Members of the Board of Education, as well as Assistant Superintendents, Attorney Beth Sims, the Athletic Director, and the Section I Executive Director. "When a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job." Carter v. Inc. Vill. of Ocean Beach, 693 F. Supp. 2d 203, 211 (E.D.N.Y. 2010). That plaintiff "copied the [letter] to . . . the entit[ies] ultimately responsible for the proper functioning" of the District "is simply further evidence that . . . the [letter]—whether required or not—was clearly pursuant to his duties" as Superintendent. See Frisenda v. Inc. Vill. of Malverne, 775 F. Supp. 2d 486, 508 (E.D.N.Y. 2011).

Accordingly, plaintiff has not plausibly alleged he was speaking as a private citizen when he complained about the misuse of the District's resources.

     B.    <u>Education Law Section 3012-c</u>

Second, plaintiff alleges he spoke as a private citizen when he "disagreed with the Defendant's counsel over the applicability and implementation of annual professional performance reviews . . . required by 3012-c of the Education Law of the State of New York[.]" (FAC ¶¶ 19, 20).  The Court disagrees.

Plaintiff's speech concerning the applicability and implementation of the Education Law owes its existence to plaintiff's job as Superintendent, and thus is not protected by the First Amendment.  See <u>Garcetti v. Ceballos</u>, 547 U.S. at 421; <u>McGuire v. Warren</u>, 2009 WL 3963941, at *2, *5-7 (S.D.N.Y. Nov. 18, 2009) (holding a director of special education services spoke pursuant to her official duties when she expressed concern that a program for autistic children did not comply with state guidelines); <u>O'Brien v. Yugartis</u>, 54 F. Supp. 3d 186, 193 (N.D.N.Y. 2014) (holding that a Code Enforcement Officer's speech about the "scope, extent, and applicability" of village codes "owed its existence to his responsibilities as Code Enforcement Officer" and was not protected by the First Amendment).

Accordingly, plaintiff has not plausibly alleged he was speaking as a citizen when he disagreed with the District's counsel over the applicability of the Education Law.

III.    <u>State Law Claim</u>

Having dismissed plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over the remaining state law claim pursuant to 28 U.S.C. § 1367(c).[2]

---

[2]    Although plaintiff has pleaded that the parties are diverse, the amount in controversy in plaintiff's state law claim does not exceed $75,000.  Thus, the Court has no independent jurisdictional basis over plaintiff's state law claim.  <u>See</u> 28 U.S.C. § 1332.

## CONCLUSION

Defendant's motion to dismiss the first amended complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #18) and close this case.

Dated: July 7, 2015
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

9